UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON A. THOMPSON, JR., AND FLORIA M. GRIFFIN,<br><br>Plaintiffs,<br><br>v.<br><br>JANSSEN PHARMACEUTICALS, INC. ALSO KNOWN AS ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICAL, INC.; JANSSEN LP; JOHNSON & JOHNSON, INC.; AND "JOHN DOES" 1-5 (SAID NAMES BEING FICTITIOUS, AS THE TRUE NAMES ARE PRESENTLY UNKNOWN), IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,<br><br>Defendants. | Case No. 2:16-CV-02628-PSG-AGR<br><br>**[PROPOSED] JUDGMENT DENYING PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS JANSSEN PHARMACEUTICALS, INC. AND JOHNSON & JOHNSON**<br><br>**MATTER FOR DETERMINATION BEFORE THE HONORABLE PHILIP S. GUTIERREZ** |

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROP] JUDGMENT DENYING MOT. FOR VOL. DISMISSAL & GRANTING SUMMARY JUDGMENT

CASE NO. 2:16-CV-02628-PSG-AGR

90400996.1

# JUDGMENT

After full consideration of the Motion for Voluntary Dismissal by plaintiffs Vernon A. Thompson and Floria M. Griffin ("Plaintiffs"), and the Motion for Summary Judgment by defendants Janssen Pharmaceuticals, Inc. and Johnson & Johnson ("Defendants"), the Opposition and Reply papers, the evidence, and the authorities submitted, the Court denies Plaintiff's motion for voluntary dismissal. The Court further finds there is no triable issue of material fact in this case, and Defendants are entitled to summary judgment as a matter of law.

For the reasons set forth in the Court's MINUTE ORDER DENYING PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2) AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, dated October 23, 2017 (*see* Dkt. # 51 and attached hereto as **Exhibit A**), it is therefore ORDERED, ADJUDGED, AND DECREED that:

Defendants' Motion for Summary Judgment is granted;

Judgment is entered in favor of Defendants;

Plaintiffs recover nothing by their suit; and

Defendants are entitled to recover thier costs and charges expended and have execution therefor.

**IT IS SO ORDERED.**

DATED: 11/3/17

PHILIP S. GUTIERREZ
_____
HONORABLE PHILIP S. GUTIERREZ
United States District Judge

# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**  Order **DENYING** Plaintiffs' motion for voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) and **GRANTING** Defendants' motion for summary judgment

Before the Court is a motion for voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) filed by Plaintiffs Vernon A. Thompson, Jr. and Floria M. Griffin ("Plaintiffs"), *see* Dkt. # 34 ("*Plaintiffs Mot.*"), and a motion for summary judgment filed by Defendants Janssen Pharmaceuticals, Inc. and Johnson & Johnson ("Defendants"), *see* Dkt. # 42 ("*Defendants Mot.*").[1]  Both motions are opposed.  *See* Dkts. # 40 ("*Defendants Opp.*"), 46 ("*Plaintiffs Opp.*").  Defendants also filed a reply in support of their motion for summary judgment.  See Dkt. # 49 ("*Defendants Reply*").[2]  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); L.R. 7-15.  Having considered the moving papers, the Court **DENIES** Plaintiffs' motion for voluntary dismissal and **GRANTS** Defendants' motion for summary judgment.

I.     Background

This action stems from Plaintiff Vernon A. Thompson, Jr.'s use of the medication Risperdal, which he claims caused him medical injury for which Defendants Janssen Pharmaceuticals, Inc. ("Janssen") and Johnson & Johnson ("J&J") did not provide adequate warning.

---

[1] Defendant Janssen Pharmaceuticals, Inc. was erroneously named in the complaint as "Janssen Pharmaceuticals, Inc. also known as Ortho-McNeil-Janssen Pharmaceuticals, Inc." and "Janssen Pharmaceutical, Inc." and incorrectly designated as "Janssen LP."  *See Defendants Opp.*

[2] As a preliminary matter, Defendants assert evidentiary objections in their reply.  To the extent that the Court relies on objected-to evidence, it relies only on admissible evidence and, therefore, the objections are **OVERRULED**.  *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

A. <u>Factual Background</u>

    i. *Risperdal*

In 1993, the U.S. Food and Drug Administration ("FDA") approved Risperdal for use in "management of the manifestations of psychotic disorders" for adults with schizophrenia and other psychotic disorders. *Defendants' Statement of Undisputed Facts* ("*DSUF*"), Dkt. # 42-2, ¶ 53; *Declaration of Steven M. Selna* ("*Selna Decl.*"), Dkt. # 43, Ex. K (1993 Risperdal package insert). Although the FDA eventually extended its use to pediatrics as well, *DSUF* ¶ 54; *Selna Decl.* Ex. L (2006 FDA letter), in 2001, Risperdal's FDA-approved labeling expressly indicated that "[s]afety and effectiveness in children have not been established" and that "gynecomastia [breast enlargement] has been reported with prolactin-elevating compounds but the clinical significance is unknown for most patients." *Selna Decl.* Ex. M (2001 Risperdal package insert). When the FDA approved Risperdal for use in pediatric patients in 2006, the following language was added to the label to reflect potential risks:

> Hyperprolactinemia
>
> As with other drugs that antagonize dopamine D2 receptors, risperidone elevates prolactin levels, and the elevation persists during chronic administration. *Risperidone is associated with higher levels of prolactin elevation than other antipsychotic agents.* . . .
>
> Galactorrhea, amenorrhea, *gynecomastia*, and impotence have been reported in patients receiving prolactin-elevating compounds. . . .
>
> Hyperprolactinemia, Growth, and Sexual Maturation
>
> Risperidone has been shown to elevate prolactin levels in children and adolescents as well as in adults (see PRECAUTIONS – Hyperprolactinemia). In double-blind, placebo-controlled studies of up to 8 weeks duration in children and adolescents (aged 5 to 16 years), 49% of patients who received risperidone had elevated prolactin levels compared to 2% of patients who received placebo. . . .
>
> The long-term effects of risperidone on growth and sexual maturation have not been fully evaluated.

*Selna Decl.* Ex. N (2006 Risperdal label) (emphasis added). Pediatric use and this additional language followed a multi-year back-and-forth between the FDA and Janssen. *DSUF* ¶¶ 57–62.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

Both the 2006 label and an updated 2007 label referenced a 2.3 percent reported rate of gynecomastia in patients—a figure approved by the FDA. *DSUF* ¶¶ 63–64; *Selna Decl.* Exs. Z (email to FDA listing pooled studies), BB (2007 Risperdal label). In 2008, the FDA conducted a year-long pediatric review of risperidone and, after reviewing all adverse event reports received between February 2007 and February 2008, found only four cases of gynecomastia and two cases of hyperprolactinemia; the FDA concluded that "the current risperidone label appears to address all of the issues discussed in this review" and "recommend[ed] that no further labeling changes regarding the pediatric population are necessary at this time." *DSUF* ¶ 65; *Selna Decl.* Ex. CC (FDA "1-year Pediatric Exclusivity Post marketing Adverse Event Review" for risperidone). The gynecomastia and elevated prolactin warnings on Risperdal labels have remain unchanged since 2007. *DSUF* ¶ 66; *Selna Decl.* Exs. BB (2007 Risperdal label), DD (2012 Risperdal label).

        ii.    *Thompson's Medical History*

Plaintiff Thompson has taken the medication Risperdal regularly since 2001, after being diagnosed with tics and other disorders. *DSUF* ¶¶ 2–3; *Selna Decl.* Ex. C 13:5–9, 65:18–21, 103:14–19 (Deposition of Vernon A. Thompson, Jr. ("*Thompson Dep.*")). He testified that Risperdal has effectively controlled his tics, and has continued to take the medication despite both the alleged ill side-effects that form the basis of this action and the recommendation of physicians that he stop using Risperdal. *DSUF* ¶¶ 4, 6; *Thompson Dep.* 119:2–8, 140:12–20; *Selna Decl.* Ex. G 50:6–9 (Deposition of Laila F.M. Contractor, M.D. ("*Contractor Dep.*")); *Selna Decl.* Ex. F 36:18–25 (Deposition of William Miller, M.D. ("*Miller Dep.*"); *Selna Decl.* Ex. E 103:24–104:5 (Deposition of Diane M. Stein, M.D. ("*Stein Dep.*")). Specifically, Thompson claims that, as a result of his use of the medication, he has "suffered serious and debilitating physical, psychological, pecuniary and related injuries, including permanent disfigurement, significant and severe weight gain, diabetes mellitus, hyperglycemia, hyperprolactinemia, enuresis, damage to his sexual and endocrine functions, gynecomastia, impaired motor skills, dyssomnia, anxiety, embarrassment, difficulty concentrating, agitation, and impaired thinking, medical expenses, lost and/or diminished earning capacity and psychological trauma." *Complaint* ("*Compl.*"), Dkt. # 2, ¶ 4. Ultimately, the parties appear to agree that the only alleged medial conditions that remain in dispute are hyperprolactinemia (elevated prolactin levels) and gynecomastia (breast enlargement).

Thompson was a patient of Dr. Diane Stein from February 2001 until October 2008. *DSUF* ¶ 9; *Stein Dep.* 96:23–24. Dr. Stein testified that she was aware that Risperdal could result in an elevation of prolactin, although she did not put it on the medication's list of "irreversible side effect[s] until it became a big deal in medicine." *Stein Dep.* 49:17–23. Indeed,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

warnings about both hyperprolactinemia and gynecomastia were included on Risperdal's label, *DSUF* ¶ 12; *Stein Dep.* 50:16–23, although Dr. Stein testified that she generally relied on her past experience and medical studies rather than medication labels for information about potential side effects. *Stein Dep.* 43:17–44:12; 45:3–12. At the time Dr. Stein prescribed Risperdal to Thompson, it was the standard of care at Kaiser, where she worked, to prescribe it to treat tics in pediatric patients. *DSUF* ¶ 14; *Stein Dep.* 33:7–25, 42:1–43:12, 53:1–7; 54:22–25. She chose the medication as part of a combination of behavioral and pharmacological therapy to treat Thompson's tics, which were adversely affecting his personal life and academic studies. *DSUF* ¶ 16; *Stein Dep.* 34:12–21. Because Thompson's tics improved while on Risperdal, Dr. Stein continued prescribing it until she closed her practice at Kaiser in October 2008. *DSUF* ¶ 19; *Stein Dep.* 97:4–9.

From 2005 until 2009, Dr. Carol Rae Ishimatsu was Thompson's primary pediatrician. *DSUF* ¶ 36; *Selna Decl.* Ex. I 48:11–15 (Deposition of Carol Rae Ishimatsu, M.D. ("*Ishimatsu Dep.*")). Dr. Ishimatsu testified that, based on her 30 years' experience treating minor patients, gynecomastia in pubertal boys is "very common," explaining that "three out of four males going through adolescence are going to have . . . some gynecomastia present." *DSUF* ¶¶ 33–34; *Ishimatsu Dep.* 19:1–21, 21:6–12, 50:11–14. Dr. Ishimatsu was aware of Thompson's Risperdal use, and although Thompson's mother was "pretty good" about updating her with his health concerns, at no time did Thompson or his mother express concern about abnormal chest growth. *DSUF* ¶¶ 37–38; *Selna Decl.* Ex. J (Thompson's Kaiser medical records); *Ishimatsu Dep.* 57:5–11, 63:18–64:2. Dr. Ishimatsu recalled that, although she did "not know whether or not he had gynecomastia," he did not have an abnormal amount of breast tissue, and concluded that it was not "a medical condition that reached a level of concern in my memory of him." *Ishimatsu Dep.* 49:14–50:3.

Thompson has seen Dr. Shaun Reid, a family practitioner, once or twice a year since January 2010, and he has provided routine health screenings, physical examinations, and counseling. *DSUF* ¶¶ 40–41; *Selna Decl.* Ex. H 12:16–20, 23:15–18, 49:14–19 (Deposition of Shaun Reid, M.D. ("*Reid Dep.*")). Dr. Reid's records indicate that neither Thompson nor his mother ever discussed breast enlargement, and he testified that it would have been his practice to record such a concern. *Reid Dep.* 47:6–19. Dr. Reid also testified that it is not unusual for obese males like Thompson to have enlarged breasts due to a buildup of excess fat. *DSUF* ¶ 45; *Reid Dep.* 42:23–43:6.

On September 30, 2014, Thompson and his mother sought Dr. Reid's opinion regarding two masses that formed under each of his armpits, which had been diagnosed by two other physicians as lipoma (fatty tissue); Dr. Reid concurred with this diagnosis and recommended that Thompson undergo an ultrasound and consult a surgeon. *DSUF* ¶ 43; *Plaintiffs' Statement*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

*of Disputed Facts* ("*PSDF*"), Dkt. # 47, ¶ 43; *Reid Dep.* 28:4–11, 31:2–16, 32:10–23, 34:14–18, 37:11–18, 44:10–15; *Selna Decl.* Ex. J (Thompson's Kaiser medical records). The ultrasound was read as normal, leading Dr. Reid to conclude that the lump was likely excess fat or a resolved lymph node. *Reid Dep.* 35:16–24. Consequently, during a February 11, 2015 examination, Dr. Reid indicated that Thompson had gynecomastia. *Reid Dep.* 58:19–59:4; *Declaration of Bryan E. Johnson* ("*Johnson Decl.*"), Dkt. # 48, Ex. L (medical report indicating that the "lump in [Thompson's] left axilla" was "[l]ikely fat as [Thompson] does have some gynecomastia").

Thompson has also been a patient of Dr. Laila F.M. Contractor, a psychiatrist, since 2011. *DSUF* ¶ 25; *Contractor Dep.* 13:20–22, 17:3. Dr. Contractor confirmed that, as part of her medical education, she learned that elevated prolactin can cause gynecomastia, and that the condition is a potential risk of Risperdal use. *DSUF* ¶ 26; *Contractor Dep.* 56:10–12. After weighing these risks with the medication's benefits, she prescribed Risperdal to Thompson, and during each of his visits would explain to him and his mother the medication's risks, benefits, and side effects and receive their consent to use Risperdal. *DSUF* ¶¶ 29–30; *Contractor Dep.* 26:4–28:24, 48:18–49:2, 49:12–15. Like Dr. Miller, Dr. Contractor did not recall either Thompson or his mother expressing any concerns about gynecomastia or enlarged breasts. *DSUF* ¶ 32; *Contractor Dep.* 30:18–31:7, 57:6–9.

Thompson testified that he first noticed his abnormal breast growth in October 2014, when he was 22 years of age, after watching an attorney advertisement regarding Risperdal use. *DSUF* ¶ 48; *Thompson Dep.* 137:3–14, 140:2–11. Thompson came to believe that the two masses under his armpits, which had been diagnosed and addressed by Dr. Reid, were caused by Risperdal. *DSUF* ¶ 50; *Thompson Dep.* 139:12–140:1.

In February 2015, Thompson and his mother saw Dr. William Miller for the specific purpose of discussing Risperdal's potential side effects and whether he should continue taking the medication, which his mother reported had helped reduce his tics. *DSUF* ¶ 20; *Miller Dep.* 28:20–24, 29:11–16; *Thompson Dep.* 117:23–118:10. Dr. Miller testified that he informed Thompson that Risperdal's side effects can include weight gain, elevated blood sugar, and elevated prolactin, *Miller Dep.* 33:23–34:22, and although neither Thompson nor his mother expressed any concern about gynecomastia at that time, Dr. Miller nevertheless recommended that Thompson stop using Risperdal if his tics were not overly bothersome. *DSUF* ¶¶ 23–24; *Miller Dep.* 36:18–25, 40:7–12.

     B.     <u>Procedural Background</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

Plaintiffs filed this product liability failure-to-warn case on April 20, 2016. *See Compl.* In it, they allege thirteen causes of action: (1) negligence, (2) breach of express warranty, (3) breach of implied warranty, (4) violation of California Business & Professions Code § 17500 et seq., (5) fraudulent concealment, (6) strict products liability—failure to warn, (7) negligence—failure to warn, (8) negligence per se, (9) negligent misrepresentation, (10) false advertising, (11) fraudulent misrepresentation, (12) intentional infliction of emotional distress, and (13) negligent infliction of emotional distress. *See id.* ¶¶ 40–133.

On November 28, 2016, the parties filed a Joint Statement of Scheduling Conference and Proposed Discovery Plan, *see* Dkt. # 17 ("*Joint Statement*"), which included notice that a coordinated proceeding involving Risperdal, *In re Risperdal and Invega Cases*, JCCP No. 4775 ("*In re Risperdal*"), was already pending in state court. *See Joint Statement* ¶ 10. One day later, the Court set all pretrial dates, with discovery cut-off on August 22, 2017; initial expert disclosures on August 29, 2017; and summary judgment motions due on September 5, 2017. *See* Dkt. # 18.

Plaintiffs filed their motion for voluntary dismissal on September 1, 2017, claiming that, although they "have been diligently seeking discovery to prove their case," they are "unable to do so effectively in this forum, and seek adjudication of identical issues in Los Angeles Superior Court, where Plaintiffs intend to file" as part of the *In re Risperdal* litigation. *Plaintiffs Mot.* 4:16–23. Accordingly, they now seek voluntary dismissal without prejudice under Federal Rule of Civil Procedure ("FRCP") 41(a)(2). *See id.* 5:3–4.

Soon thereafter, on September 5, 2017, Defendants filed their motion for summary judgment.[3]

II.     Legal Standard

    A.     Motion for Voluntary Dismissal

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P 41(a)(2). A motion for voluntary dismissal under Rule 41(a)(2) is addressed to the sound discretion of the court. *See Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982). The Ninth Circuit has held that district courts "should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (citations

---

[3] This initial motion was stricken from the docket due to a procedural issue, *see* Dkt. # 41, and so Defendants filed a corrected motion on September 11, 2017.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

omitted). In this context, "'legal prejudice' means 'prejudice to some legal interest, some claim, [or] some legal argument.'" *Id.* at 976 (quoting *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)). Neither "[u]ncertainty because a dispute remains unresolved" nor "the threat of future litigation which causes uncertainty" constitutes legal prejudice. *Westlands Water Dist.*, 100 F.3d at 96–97.

  B. <u>Motion for Summary Judgment</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Electric Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III. <u>Discussion</u>

Because a favorable resolution of Plaintiffs' motion for voluntary dismissal would render moot Defendants' motion for summary judgment, the Court will address the former motion first.

  A. <u>Plaintiffs' Motion for Voluntary Dismissal</u>

"In determining whether dismissal without prejudice is appropriate, district courts in this circuit have considered the following factors: (1) the opposing party's effort and expense in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

preparing for trial; (2) excessive delay and lack of diligence by the moving party in prosecuting the action; (3) insufficient explanation of the need for dismissal; and (4) the fact that the opposing party has moved for summary judgment." *Beckett v. MACYSDSNB*, No. C11-00246 HRL, 2012 WL 479593, at *2 (N.D. Cal. Feb. 14, 2012) (citing *Williams v. Peralta Cmty. Coll. Dist.*, 227 F.R.D. 538, 540 (N.D. Cal. 2005)). In considering these factors and the current disposition of this action, the Court concludes that dismissal without prejudice is not appropriate at this time.

Plaintiffs argue that the factors weigh in favor of granting their motion. They concede that "effort and expenses have been expended by Defendants in their answering of the complaint of Plaintiff[s], their taking of multiple depositions of treating physicians of Plaintiff[s], their obtaining expert opinions, and their responding to discovery requests," but note that "the results of those efforts and expenses are directly transferrable to any future litigation in another forum." *Plaintiffs Mot.* 7:3–7. This would include the pending action in state court, *In re Risperdal*, where Plaintiffs intend to refile this action. Plaintiffs also argue that, although they "have been diligently attempting to prosecute this action," the nature of the case and the amount of discovery required necessitates "more time . . . and more resources" to "adequately and efficiently present" their case. *Id.* 7:10–20.

The Court is not persuaded by these arguments and observations. Although Plaintiffs, as they claim, may have diligently prosecuted this action, Defendants note that Plaintiffs have "failed to serve an expert disclosure or expert reports," *Defendants Opp.* 6:27–28—which are vital in this sort of product liability action. *See, e.g.*, *Cox v. Depuy Motech, Inc.*, No. 95-CV-3848-L(JA), 2000 WL 1160486, at *7 (S.D. Cal. Mar. 29, 2000) ("Because plaintiff does not have an expert who can establish medical causation, an essential element of a products liability claim, plaintiff cannot withstand defendant's motion for summary judgment on the issue of causation."). Another issue of delay is more troubling to the Court. Plaintiffs' motion is purportedly premised on their intention to join the pending state court action, and yet they give no explanation as to why they waited until this relatively late date—filing the motion mere days before the deadline for summary judgment motions—when they had notice of *In re Risperdal* for almost a year. *See Defendants Opp.* 7:3–9 (citing *Joint Statement* ¶ 10). The Court interprets this lack of justification as an "insufficient explanation of the need for dismissal," which is one of the factors it should consider on this motion.

Plaintiffs' motion was filed shortly before—which is to say, "one court day before," *Defendants Opp.* 8:9–10—Defendants filed their motion for summary judgment. However, Defendants indicate that they had "notified [P]laintiffs they would be filing their summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

judgment motion" *prior* to the filing of the motion for voluntary dismissal. *Id.* 8:10–11.[4] Whether or not a defendant has moved for summary judgment is one of the four factors to be considered when addressing this motion, and although Defendants' summary judgment motion was not filed until after Plaintiffs' motion, there is every indication that Plaintiffs knew that Defendants' motion was imminent. Furthermore, the proximity of the two motions raises the inference that Plaintiffs' motion might have been motivated by a desire to, in Defendants' words, "avoid an imminent adverse ruling by way of [D]efendants' summary judgment motion and also avoid the consequence of their failure to serve expert disclosures." *Id.* 9:6–9. Such a gambit has been routinely rejected by courts. *See, e.g., Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 Fed. App'x 664, 666 (9th Cir. 2008) (citing *Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1988)) ("A district court may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling."); *Martin v. Winett*, No. 1:04-cv-05358-LJO-BAM PC, 2012 WL 2360800, at *2 (E.D. Cal. June 20, 2012) (quoting *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996)) ("[A] party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice.").

In summation, the Court finds that Plaintiffs have not provided sufficient justification for voluntary dismissal given the untimeliness of the request and the proximity to Defendants' motion for summary judgment. Accordingly, the Court **DENIES** Plaintiffs' motion, and will therefore address Defendants' motion for summary judgment.

> B.  Defendants' Motion for Summary Judgment

Plaintiffs do not dispute Defendants' assertion that all of Plaintiffs' thirteen causes of action are "premised on Defendants' alleged failure to warn about the rate of gynecomastia." *Defendants Mot.* 27 n. 9. Defendants argue that all of Plaintiffs' claims therefore fail, for a number of reasons: first, "[b]ecause Plaintiff continues to take the medicine in light of the alleged risks, he has assumed the risk and has no legal claim," *id.* 6:21–23; second, "Plaintiff also cannot satisfy his burden of proof under California law to demonstrate that a different warning would have changed his physicians' decision to prescribe Risperdal," *id.* 7:1–3; third, "Plaintiff cannot prove that the Risperdal label was inadequate during the time that he used Risperdal," *id.* 7:14–15; fourth, "Plaintiff cannot produce reasonably reliable evidence that Risperdal caused his alleged gynecomastia—or that he even has gynecomastia," *id.* 7:19–20; and fifth, "Plaintiff cannot prevail on his claim for punitive damages" because there "is no evidence of intentional or reckless conduct on the part of Defendants," *id.* 8:8–12.

---

[4] Indeed, Defendants' motion for summary judgment indicates that the parties' Local Rule 7-3 conferenced occurred on August 29, 2017—three days before Plaintiffs filed their motion. *See Defendants Mot.* 2:21–22

| CV-90 (10/08) | **CIVIL MINUTES - GENERAL** | Page 9 of 14 |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

       *i.      Assumption of Risk*

      Under California law, a plaintiff must prove that a defendant's conduct—in this case, alleged failure to warn of a risk—was the proximate cause of the alleged injuries. *See Rutherford v. Owens-Ill., Inc.*, 16 Cal. 4th 953, 968 (1997) ("In the context of products liability actions, the plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury."). Defendants argue that Thompson "cannot satisfy his burden here because he is well aware of the risk of gynecomastia but continues to use Risperdal because he believes the benefits of the medicine in treating his condition outweigh the very risks that he has sued upon." *Defendants Mot.* 18:18–21.

      The Court disagrees with Defendants that the "record is clear" that Thompson was aware of the known risks of Risperdal, including gynecomastia and elevated prolactin, at the time he used the medication. Dr. Contractor, one of Thompson's physicians, testified that it was her "standard practice" to discuss gynecomastia with patients who use Risperdal, but conceded that she did not "recall if [she] specifically did with" Thompson. *Contractor Dep.* 56:10–18. In February 2015, Thompson and his mother saw Dr. Miller for the specific purpose of discussing Risperdal's potential side effects and whether he should continue taking the medication. *DSUF* ¶ 20. Dr. Miller's deposition testimony indicates that he discussed various potential side effects with Thompson, including tardive dyskinesia, weight gain, and elevated blood sugar levels, but does not show that they discussed gynecomastia. *Miller Dep.* 30:18–22, 33:4–10, 33:23–34:20. None of the other physicians seen by Thompson testified that they discussed gynecomastia with him. Accordingly, the record is clear that, at least as of 2015, Thompson was aware of some of the potential side effects associated with Risperdal use. However, the record does *not* clearly indicate that Dr. Contractor, Dr. Miller, or anyone else discussed gynecomastia with Thompson—the condition that is central to this litigation.

      In opposition, Plaintiffs cite the case *Burke v. Almaden Vineyards, Inc.*, 86 Cal. App. 3d 768 (1978), for the proposition that a "plaintiff [is not] required to make a showing that would avoid the defense of assumption of risk." *Plaintiffs Opp.* 10:4–6. Regardless of this statement's accuracy, *Burke* nonetheless held that "[l]iability does not attach if the dangerous propensity is either obvious or *known to the injured person at the time he uses the product*." *Burke*, 86 Cal. App. 3d at 772 (emphasis added). However, despite the validity of this defense, the Court finds that the record creates a triable issue as to whether Thompson was aware of the risk of gynecomastia during the time he used Risperdal. Therefore, it declines to grant Defendants' motion on this basis.

       *ii.     Learned Intermediary Doctrine*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

Defendants next argue that Plaintiffs' claims fail as a matter of law under the learned intermediary doctrine. *See Defendants Mot.* 19:5–24:3.

Under California law, it is the duty of a manufacturer of prescription medication to provide warnings of side effects based on the scientific and medical knowledge available. *See Carlin v. Superior Ct.*, 13 Cal. 4th 1104, 1113 (1996). However, under the learned intermediary doctrine, this duty to warn runs to *physicians*, not to *patients* directly. *See id.* at 1116 ("[I]n the case of prescription drugs, the duty to warn runs *to the physician*, not to the patient.") (emphasis in original). Accordingly, "a manufacturer discharges its duty to warn if it provides adequate warnings to the physician about any known or reasonably knowable dangerous side effects, regardless of whether the warning reaches the patient." *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 990–91 (C.D. Cal. 2001), *aff'd*, 358 F.3d 659 (9th Cir. 2004). "A plaintiff asserting causes of action based on a failure to warn must prove not only that no warning was provided or the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury." *Motus*, 196 F. Supp. 2d at 991 (citing *Plummer v. Lederle Labs.*, 819 F.2d 349, 358 (2d Cir. 1987); *Kirsch v. Picker Int'l*, 753 F.2d 670, 671 (8th Cir. 1985); *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 645 (4th Cir. 1981)).

The Court agrees with Defendants' assertion that Plaintiffs "cannot demonstrate that the warnings were inadequate or that a different warning would have changed [Thompson's] physicians' decision to prescribe Risperdal." *Defendants Mot.* 19:20–22.

    a.    *Risperdal's Warnings*

As Defendants correctly note, "[a]t all relevant times, the label for Risperdal warned of the risk of gynecomastia based on its approved indication." *Id.* 22:5–6. At the time Thompson was first prescribed the medication in 2001, the Risperdal label indicated that "gynecomastia has been reported with prolactin-elevating compounds." *DSUF* ¶ 55. After the FDA approved pediatric use, the label stated that "[r]isperidone has been shown to elevate prolactin levels in children and adolescents" and that "gynecomastia was reported in 2.3% of risperidone treated patients." *DSUF* ¶ 56. Plaintiffs provide no evidence that these warnings were either inadequate or inaccurate, and indeed, at least one court has concluded that the Risperdal label was adequate as a matter of law in disclosing the risk of gynecomastia. *See Apel v. Johnson & Johnson*, No. MID-L-10623-09-MT, 2014 WL 10176352, at *16 (N.J. Super. Ct. July 25, 2014).

    b.    *Physicians' Decisions*

The Ninth Circuit has held that under California law, a product defect claim based on insufficient warnings cannot survive summary judgment if stronger warnings would not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

altered the conduct of the prescribing physician. *See Motus*, 358 F.3d at 661 (affirming grant of summary judgment for defendant where plaintiff "failed to establish proof that stronger warnings would have changed her husband's medical treatment"); *see also Ramirez v. Plough, Inc.*, 6 Cal. 4th 539, 556 (1993) ("[T]here is no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury.").

A plaintiff cannot prove that an allegedly inadequate warning was the proximate cause of his or her injury where the treating physician knew of the risk at issue. *See Plummer*, 819 F.2d at 359 (applying California law and concluding that "no one needs notice of that which he already knows"). Here, the record shows that all of Thompson's prescribing physicians were aware of gynecomastia and other risks associated with Risperdal. *DSUF* ¶¶ 12, 22, 26. Plaintiffs have provided no evidence to suggest that any of these physicians were unaware of the relevant risks associated with the medication. For this reason alone, Plaintiffs' claims cannot survive under the learned intermediary doctrine.

Furthermore, to prevail on this type of failure-to-warn claim, a plaintiff must also establish that a different warning would have changed the prescribing physician's decision, and failure to provide such evidence warrants summary judgment for the defendant. *See Motus*, 196 F. Supp. 2d at 999 (concluding that defendant is entitled to summary judgment where there is "no evidence that [the doctor] would have acted differently had [the manufacturer] provided an adequate warning"); *In re Zyprexa Prods. Liab. Litig.*, Nos. 04-MD-1596 (JBW), 06-CV-2782 (JBW), 2009 WL 3596982, at *11 (E.D.N.Y. Oct. 20, 2009) (applying California law and granting summary judgment where plaintiff "offered no evidence suggesting that his physicians would have altered their prescription decisions had [defendant's] warning been different, as required under California's learned intermediary doctrine"). Here, Plaintiffs have provided no evidence that a different warning would have altered the physicians' decisions to prescribe Risperdal. Therefore, they cannot demonstrate the causation required to survive summary judgment under California's learned intermediary doctrine.

      *c.*     *Overpromotion Exception*

In opposition, Plaintiffs do not dispute Defendants' conclusions regarding the learned intermediary doctrine but instead argue that it does not apply in this case. *See Plaintiffs Opp.* 10:21–17:11.

California courts have in the past recognized that the learned intermediary doctrine may not apply where a medication has been overpromoted to the extent that any warnings would have been nullified. *See Stevens v. Parke, Davis & Co.*, 9 Cal. 3d 51, 65 (1973) ("Although the manufacturer or supplier of a prescription drug has a duty to adequately warn the medical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

profession of its dangerous properties or of facts which make it likely to be dangerous, an adequate warning to the profession may be eroded or even nullified by overpromotion of the drug through a vigorous sales program which may have the effect of persuading the prescribing doctor to disregard the warnings given."); *Love v. Wolf*, 226 Cal. App. 2d 378, 396 (1964) ("[W]arnings must be deemed cancelled out if overpromotion through a vigorous sales program persuaded doctors to disregard the warnings given."). However, the Court agrees with Defendants' conclusion that Plaintiffs "make[] too much of *Stevens* and *Love*." *Defendants Reply* 12:15–16.

Courts have recognized that these two cases and others of their ilk are of limited applicability. *See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, Nos. 04-MD-1596 (JBW), 07-CV-4505 (JBW), 2009 WL 2004540, at *14 (E.D.N.Y. July 1, 2009) ("In *unusual cases*, courts have found a drug manufacturer's excessive promotion of its product may negate or call into question operation of the learned intermediary doctrine.") (emphasis added). More damaging to Plaintiffs' arguments, however, is the fact that courts have held that the overpromotion exception does not apply in cases where a plaintiff's prescribing physician did not rely on promotional statements when choosing treatment options. *See, e.g.*, *Motus*, 196 F. Supp. 2d at 999 (determining that plaintiff "could not demonstrate that [defendant's] alleged overpromotion caused" the doctor to prescribe the medication at issue because he "did not rely on any statements from" defendant); *Huntman v. Danek Med., Inc.*, No. 97-2155-IEG RBB, 1998 WL 663362, at *6 (S.D. Cal. July 24, 1998).

Here, Plaintiffs have provided no evidence that any of Thompson's prescribing physicians relied on any statements by Defendants' sales representatives or marketing materials when they prescribed Risperdal. In fact, as Defendants note, the record indicates that at least two of the physicians, Dr. Stein and Dr. Contractor, knew that the Risperdal label contained warnings about hyperprolactinemia and gynecomastia before prescribing it to Thompson. *DSUF* ¶¶ 12, 31. At least one court has refused to apply the overpromotion exception under similar circumstances. *See Plummer*, 819 F.2d at 358–59.

Plaintiffs have offered evidence of Defendants' extensive efforts to promote Risperdal. *PSDF* ¶¶ 64–76; *Plaintiffs Opp.* 14:8–17:11. However, such evidence is irrelevant because the record contains no evidence that any of Thompson's prescribing physicians relied on these promotional activities. Therefore, the Court concludes that the overpromotion exception to the learned intermediary doctrine does not apply in this case.

Because Plaintiffs have failed to provide any evidence of causation under the learned

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2628 PSG (AGRx) | Date | October 23, 2017 |
|---|---|---|---|
| Title | Vernon A. Thompson, Jr. et al. v. Janssen Pharmaceuticals, Inc. et al. | | |

intermediary doctrine, its causes of action against Defendants cannot be sustained. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment.[5]

IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for voluntary dismissal and **GRANTS** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

---

[5] Because the Court finds Defendants' causation argument dispositive of Plaintiffs' claims, it will not consider Defendants' alternate arguments relating to Plaintiffs' lack of expert testimony and punitive damages.